**James D. HODGSON, Secretary of Labor, United States Department of Labor, Appellant,**

**v.**

**A–1 AMBULANCE SERVICE, INC., Appellee.**

**No. 20670.**

United States Court of Appeals, Eighth Circuit.

Feb. 4, 1972.

Mack A. Player, Atty., Peter G. Nash, Sol. of Labor, Bessie Margolin, Associate Sol., Carin Ann Clauss, Atty., U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Sol., for appellant.

James W. Moore, Smith, Williams, Friday, Eldredge & Clark, Little Rock, Ark., for appellee.

Before JOHNSEN, GIBSON and LAY, Circuit Judges.

JOHNSEN, Senior Circuit Judge.

In a suit by the Secretary of Labor against A–1 Ambulance Service, Inc., of Little Rock, Arkansas, the Company was held to be subject to the Fair Labor Standards Act; was found to have violated the minimum wage and recordkeeping requirements thereof; and was enjoined from any further violation of these provisions. Wirtz, Secretary v. A–1 Ambulance Service, Inc., 299 F. Supp. 197 (E.D.Ark.1969). No appeal was taken from that decree.

Some months later the successor Secretary filed a petition for an adjudication of civil contempt against the Company in not having complied with the injunction and requested the court to order as purging conditions that the Company pay the amounts due the employees in wage deficiencies and also pay the Secretary a sum sufficient to compensate him for the expense incurred in the litigation and the investigatory work connected therewith.

The court held a hearing on the petition; found that the Company had not complied with the injunction, but had continued to make minimum wage and recordkeeping violations; adjudged the Company and its two principal officers to be in contempt; ordered them, "in order to purge themselves of their contempt", to pay collectively a compensatory fine of $1,000; made denial, however, "at least for the time being", of the Secretary's request for an order of payment as to the wage deficiencies; and declared that whether a back pay order as to those deficiencies "will be made in the future, and if so, whether [the two officers] will be adjudged liable for it personally will depend upon A–1's compliance with the Act in the future, assuming that it stays in business". The Memorandum Opinion and Order of the court are unpublished. The Secretary has appealed from the denial of a restitutional order. We reverse.

The effect of what the court did was to make payment of the $1,000 compensatory fine a purging condition as to the existing violations and to reserve the right to use the wage deficiencies involved as a possible part of the purging conditions for any future violations which might occur. It declared that this determination was, of course, "without prejudice to the right of present or former employees to file suit for back wages, liquidated damages, and attorneys' fees under section 16(b) of the Act".

The basis on which the court refused to order payment of the wage deficiencies as a purging condition was:

"In determining whether to order back pay in this case the court has undertaken to balance the equities, to consider the impact of the award upon the defendant and its officers, the effect of the award on A–1's ability to remain in business, the consequences to the City of Little Rock of a cessation of business by A–1, and what affected employees will actually gain should an award of back pay be made".

The Memorandum Opinion went on to state that, while the court did not have any financial statements or income tax returns of the Company or the two officers before it, it was of the view from the general indications of the evidence that a back pay order would force the Company to go out of business and into bankruptcy; that there was "little reason" to believe that its place would be taken over by some other entrepreneur; that the City of Little Rock was not in a position to supply such ambulance service "at least on short notice"; and that

the ultimate result to the employees of a back pay order would appear to be that "the affected employees would get nothing from it" and that "present employees would lose their jobs".

But concerned as the court might understandably be about these local aspects, we think that they could not, as against the national policy involved in the Fair Labor Standards Act, provide a basis for discretion as to entering an order for payment of the wage deficiencies engaged in by the Company in violation of the statutory injunction issued against it, and so allowed it to still continue to operate a business in commerce. Such appears to be generally regarded as the effect of McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599. Part of the thrust of that opinion, as we read it, was directed at making it clear to the district court that, in the reversal mandated for failing to have made a contempt holding against the employer, the court also was to bear in mind that it further had the duty of entering an order for payment of the amounts of the wage violations in purging and remedial requirement.

The opinion declared, 336 U.S. at 191, 69 S.Ct. at 499:

"The absence of wilfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. * * * And the grant or withholding of remedial relief is not wholly discretionary with the judge * * *. The private or public rights that the decree sought to protect are an important measure of the remedy".

■ Here, differently than in *Jacksonville Paper*, the district court had properly held, since the question was not one of wilfulness or lack of wilfulness, that the Company's failure to have paid the mandated wages constituted a civil contempt of the injunction decree; but, as noted, it refused to order payment to be made of the deficiencies as a purging remedy. Just as wilfulness or lack of wilfulness has nothing to do with the question of civil contempt for noncompliance with the injunction, so the financial ability or inability of the employer at the time of the contempt hearing to make payment of the violative deficiencies has nothing to do with the question of the court's duty, in furtherance of the policy involved in the Act, to make an order for payment of the deficiencies in remedial and purging requirement.

The Company was an operating business. It apparently desired to remain so. The existence of a contempt adjudication and a remedial, purging payment-order against it might in itself prompt the Company and its officers to extra endeavors to get the situation cleaned up and so beneficially serve, among the intended purposes of the Act, the effecting of redress for such wage violations as have been committed. If there was, thus or otherwise, no way at all in which the Company would be able to get the contempt purged, it could hardly ask the court to make it possible for it to remain in business.

We do not mean to imply that, where the situation is one of an employer being desirous of continuing its business, where it is, however, on the basis of its general assets, present earnings, and possible outside financing sources, plainly unable to make immediate satisfaction of a contempt payment-order against it, but where it appears to be reasonably probable that it will potentially be able to do so, the court has no power to deal in any manner with that problem. But its consideration of that question can only properly come after the entry of a remedial, purging payment-order. We regard the expression and intendment of *Jacksonville Paper* as leaving a court with no discretion as to entering a contempt-purging wage-payment order.

■ This does not, however, affect its equitable power to subsequently control the just enforcement of its order.

Thus, the court can properly, we think, supplementally allow reasonable terms of time and manner of payment, where it is satisfied that this is economically necessary and that it is capable of making probable the satisfaction of the general payment-order. But it cannot, as the court did here, leave it open to an employer to continue to operate in commerce by refusing to enter a remedial, contempt-purging payment-order against it. The entry of such an order also leaves the situation directly subject to the taking of such further action against the Company here and its officers as may be proper and just in the circumstances, if the existing deficiencies are not paid.

Our holding as to the general duty of a court to enter a contempt-purging payment-order has accord in the expressions and directions of such cases, among others, as Fleming v. Warshawsky & Co., 123 F.2d 622, 626 (7 Cir. 1941); McComb v. Norris, 177 F.2d 357, 360 (4 Cir. 1949); and Tobin v. La Duke, 190 F.2d 677, 678 (9 Cir. 1951). It is in fact within the scope of our own holding in Hodgson v. Taylor, 439 F.2d 288 (8 Cir. 1971), which, however, had not yet been rendered at the time of the district court's decision here.

In *Taylor,* an injunction had been issued enjoining, among other things, further wage violations by the employer; the employer had violated the injunction by making deficient wage payments; and the district court had refused, on petition of the Secretary for an adjudication of contempt and a purging payment-order, to subject the employer to such an order on the ground of "difficulties" in the employer's situation and in the "interest of justice". We reversed and directed the entry of a purging payment order, saying (439 F.2d at 290):

" 'The Act does not exempt employers who are in financial difficulties'. * * * While such difficulties are possibly a defense in extremely unusual circumstances to a civil contempt action for failure to pay the back wages, see Hodgson v. Hotard, 5 Cir., 436 F.2d 1110 (January 11, 1971), the financial hardship caused by the order is not a valid basis on which to deny the employees their remedy or to allow a wrong against the public to go uncorrected".

The language as to an employer's financial difficulties being "possibly a defense in extremely unusual circumstances" is, as our holding above indicates, not entitled to be given application in relation to the matter of the entering of an order for payment, but only in relation to the question of the manner of the court's enforcement thereof. And any such consideration must involve an attempted accomplishment of the purposes of the Act.

The order which the court is here being directed to enter has relation to two hours in each working day that the employees were allowed for eating meals in the course of their twelve-hour shifts, during all of which time they remained subject to call to take care of any requests for ambulance service that came in to the office and were relayed to them. Wage payments had been made to them for only 10 hours instead of 12. Ascertainment of the deficiency amounts which would thus be due them in normal course cannot from the record before us be said to present any impossible task of determinable reasonable certainty.

Some additional amounts were sought to be asserted by the Secretary but the rejection which the court made of all of these has evidence sufficient to sustain the rejections. Thus, one of them involved reimbursement to the employees for the cost of white pants, shirts and some identificatory emblems, which the employees for the most part wore, but as to which there was sufficient evidence to entitle the court to find that, while the employer preferred to have the employees wear such garb, it made no insistence thereon and the employees were free to wear their regular clothes if they so desired. Beyond the testimony on the part of the officers and some other wit-

nesses, there was testimony also by some of the employees that they had not been required to wear the uniforms and emblems but had done so of their own choice; that the identificatory emblems served to give them a public prestige and thus were purchased by them as a matter of personal pride; and that their reason for using the pants and shirts of a commercial supply service was as a protection to their own clothes from the holes, tears, grease and blood incident to ambulance service.

■ Finally, we deny, without need for comment, the motion of appellee for dismissal of the appeal because of a one-day delinquency on the part of the Secretary in meeting the extended date which we had previously allowed for the filing of his appendix and brief.

Reversed and remanded.