**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RICHARD L. AHEARN, Regional Director of the Nineteenth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, *Petitioner-Appellee*, | No. 11-35848 <br><br> D.C. No. 3:11-CV-05684-RBL |
| v. | OPINION |
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCALS 21 AND 4, *Respondents-Appellants*. | |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
April 10, 2013—Seattle, Washington

Filed July 5, 2013

Before: Dorothy W. Nelson and Consuelo M. Callahan,
Circuit Judges, and Raner C. Collins, District Judge.[*]

Opinion by Judge Collins

## SUMMARY[**]

### Labor Law

The panel affirmed in part, and reversed in part, the district court's orders finding Locals 21 and 4 of the International Longshore and Warehouse Union in contempt and ordering it to pay compensatory damages, arising when the Union engaged in protest activities at a grain terminal operated by Export Grain Terminal, LLC, and Export Grain filed charges against the Union with the National Labor Relations Board.

The panel held that Section 303 of the Labor Management Relations Act was not Export Grain's sole remedy for obtaining damages resulting from unlawful labor activities. The panel further held that the district court did not abuse its discretion when it awarded compensatory damages to Export Grain, and that the record supported the amount of damages awarded to Export Grain and the NLRB. In addition, the panel held that Export Grain's participation in the civil

[*] The Honorable Raner C. Collins, United States District Judge for the District of Arizona, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

contempt proceedings did not exceed the statutorily limited role under Section 160(l) of the National Labor Relations Act given to charging parties in an action before the NLRB. The panel also held that the district court abused its discretion when it awarded compensatory damages to Burlington Northern Sante Fe and the various law enforcement agencies that responded to the scenes of the Union's protests, because those entities were not parties to the underlying NLRB actions.

## COUNSEL

Emily M. Maglio (argued), Robert S. Remar, and Eleanor I. Morton, Leonard Carder, LLP, San Francisco, California; Robert H. Lavitt, Schwerin, Campbell, Barnard, Iglitzin & Lavitt, LLP, Seattle, Washington, for Respondents-Appellants.

Kayce R. Compton (argued), Lafe E. Solomon, Acting General Counsel, Elinor L. Merberg, Assistant General Counsel, Celeste J. Mattina, Deputy General Counsel, Laura T. Vazquez, Deputy Assistant General Counsel, and Barry J. Kearney, Associate General Counsel, National Labor Relations Board, Washington, D.C., for Petitioner-Appellee.

Richard J. Pautler, Thompson Coburn LLP, St. Louis, Missouri, for Amicus Curiae EGT, LLC.

**OPINION**

COLLINS, District Judge:

Appellants Locals 21 and 4 of the International Longshore and Warehouse Union ("Union") engaged in protest activities at the site of a grain terminal operated by Export Grain Terminal, LLC ("EGT"). EGT filed charges against the Union with Appellee, the National Labor Relations Board ("NLRB").

While the NLRB action was pending, the NLRB sought injunctive relief against the Union pursuant to Sections 10(j) and 10(l)[1] of the National Labor Relations Act ("NLRA"),

---

[1] Section 10(j), 29 U.S.C. § 160(j), provides:

> The [NLRB] shall have power, upon issuance of a complaint [that a person or entity is engaging in an unfair labor practice], to petition any United States district court . . . for appropriate temporary relief or restraining order."

Section 10(l), 29 U.S.C. § 160(l), provides:

> Whenever it is charged that any person has engaged in unfair labor practice . . . the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the [NLRB], petition any United States district court . . . for appropriate injunctive relief pending the final adjudication of the [NLRB] with respect to such matter.

29 U.S.C. §§ 151–169.  The district court issued both a temporary restraining order and a preliminary injunction prohibiting the Union from engaging in certain protest activities.  The Union continued to engage in these activities, so the district court found the Union in contempt and ordered it to pay compensatory damages to the NLRB, EGT, various law enforcement agencies, and Burlington Northern Santa Fe ("BNSF").

On appeal, the Union argues that the district court's contempt awards should be vacated because the court did not have discretion to award compensatory damages to third parties, or to award damages to the charging party in an underlying labor action where Section 303 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141–187, allegedly provided the sole remedy.  The Union also argues that it was entitled to heightened procedural protections during the civil contempt proceedings because the damages were criminal, not civil, sanctions.

We conclude that the district court did not abuse its discretion when it awarded compensatory damages to EGT, and that the record supported the amount of damages awarded to EGT.  However, we conclude that the district abused its discretion when it awarded compensatory damages to BNSF and the various law enforcement agencies that responded to the scenes of the Union's protests, because these entities were not parties to the underlying NLRB action.  We therefore affirm in part and reverse in part.

**I.**

The events underlying this appeal arose out of a dispute between the Union and EGT concerning whether Union

members would operate an EGT grain terminal located on land that EGT was leasing from the Port of Washington ("Port"). The Union claimed that under the terms of a collective bargaining agreement between the Union and the Port, EGT was required to hire Union members. EGT rejected the Union's attempts to enforce the collective bargaining agreement, and informed the Union that it was going to hire non-Union members to operate the grain terminal.

Beginning in June 2011, Union members began picketing at EGT's terminal site. EGT filed charges against the Union with the NLRB, which pursued injunctive relief against the Union pursuant to Sections 10(l) and 10(j) of the NLRA. Specifically, the NLRB petitioned for a temporary restraining order and preliminary injunction, alleging that, starting in June 2011, Union members picketed at the EGT facility with signs. The NLRB claimed that Union members coerced people into refusing to perform services for EGT through threats and harassment.

According to the petition, the Union's picketing and trespassing resulted in the destruction of EGT property and the harassment of its employees and contractors, including but not limited to: breaking and/or stealing signs; tearing down gates; pushing rail cars out of their respective rail sheds; verbally and physically assaulting EGT employees and contractors; impeding ingress and egress to and from the EGT facility; harassing and threatening bodily harm and/or death to EGT employees and other individuals who crossed the picket lines; blocking the rail lines so that railway cars were unable to make scheduled deliveries to EGT; damaging vehicles, including throwing eggs at, pushing, spitting on, and keying vehicles driven by EGT employees; placing plastic

bags filled with feces outside of the EGT administration building; following EGT employees and contractors as they left the facility; dropping a black trash bag filled with manure from an aircraft onto EGT property; and dropping nails on the road leading to the entrances to the facility.

On September 1, 2011, after a hearing on the merits, the district court issued a temporary restraining order ("TRO"), prohibiting the unions from engaging in "picket line violence, threats and property damages, mass picketing and blocking of ingress and egress at the [EGT facility]" and from "restraining or coercing employees of EGT, General [Construction], or any other person doing business in relation to the EGT facility. . . ."

The NLRB alleges that on September 7, 2011, "several hundred people acting in concert with the Unions" picketed on the railroad tracks in Vancouver, Washington, blocking a BNSF train that was headed for the EGT facility with a corn delivery. The picketers allowed the train to pass seven hours later. However, the train was stopped again by Union picketers outside of the Port of Longview. The picketers refused to allow the train to make its delivery to EGT's facility. The train was able to deliver the corn only after police officers from the Cowlitz County Police Department, the Cowlitz County Sherriff's Department, and the Kelso County Police Department arrested several picketers and cleared the tracks.

The NLRB also alleges that at approximately 4:00 a.m. the next day, "over 100 cars converged on EGT's facility," and that picketers "armed with gardening shears, baseball bats, broken broom sticks, and metal pipes" approached EGT's facility. According to the NLRB, the picketers broke

windows, threatened the on-duty security guards, and threw rocks at the guards. One security guard was pulled from his car by the protestors and threatened with a metal pipe. His car was then driven into a drainage ditch. At some point during this demonstration, the picketers dumped the corn load from the BNSF train onto the railroad tracks, cut the air hoses and broke the metal couplings that connected the train cars, knocked down a portion of the fence surrounding the EGT facility, and damaged the lights on the EGT conveyor system. Later that same day, the district court granted the NLRB's petition for preliminary injunction, enjoining the same conduct described in the September 1, 2011, TRO.

On September 15, 2011, after taking testimony and hearing arguments from both parties, the district court found the Union in contempt of the TRO. On September 30, 2011, after reviewing the exhibits submitted by the NLRB, the district court awarded the NLRB $250,000 to be apportioned pro rata between the NLRB, EGT, BNSF, Longview Police Department, Kelso Police Department, Cowlitz County Sheriff's Office, and Washington State Patrol.[2] The Court awarded pro-rata compensatory damages in the following amounts: NLRB: $56,601.06; BNSF: $11,189.02; EGT: $117,112.70; Longview Police: $17,024.65; Kelso Police: $3,022.39; Cowlitz County Sheriff: $34,520.74; Washington State Patrol: $10,529.44.

---

[2] The NLRB originally asked the Court for $292,697.65. The Union objected, arguing that some of the documents provided by the NLRB as proof of its damages either pre-dated or post-dated the contumacious behavior. Noting this, the district court deducted $42,000 from the NLRB's requested damages: "I reviewed the attorney fees, I reviewed the times that they are accounting for them. I did not do a detailed evaluation, but took $50,000 . . . $42,000 off the top."

The Court subsequently set a prospective fine schedule: (1) $25,000 for any future violations of the preliminary injunction by the Union; (2) $5,000 for any violations by Union officers; and (3) $2,500, per person, for any violations by individuals.

Approximately one week later, on September 21, 2011, the NLRB alleges that several Union officers and members blocked the railroad tracks leading to the EGT facility, which prevented another BNSF train from making a delivery. Nearly 100 law enforcement officers from several departments responded to the scene and arrested several picketers.

The district court held the Union in contempt of the preliminary injunction for this incident. After briefing, the court awarded the NLRB $64,764.38 in compensatory damages. The NLRB originally sought $71,960.38.

On appeal, we must determine whether Section 303 of the LMRA was EGT's sole remedy for collecting damages. If Section 303 is not EGT's sole remedy, then we must determine whether the record supports the amount of compensatory damages awarded to EGT. We must also decide whether EGT's participation in the contempt proceedings exceeded the statutorily limited role given to charging parties in an action before the NLRB. Finally, we must consider whether the law enforcement agencies and BNSF were entitled to compensatory damages even though they were not parties to the underlying NLRB action.

## II.

We first consider whether Section 303 of the LMRA is EGT's sole remedy for obtaining damages resulting from unlawful labor activities. We conclude that it is not.

Section 303(b) provides:

> Whoever shall be injured in his business or property by reason [of] any violation of subsection (a) . . . may sue therefor in any district court of the United States . . . and shall recover the damages by him sustained and the cost of the suit.

29 U.S.C. § 187(b). Subsection (a) allows private employers to recover damages caused by secondary picketing, as defined by Section 8(b)(4), 29 U.S.C. § 158(b)(4). Section 8(b)(4), commonly referred to as the "secondary boycott" provision, prohibits labor organizations from "picketing against an employer with whom it does not have a dispute, with an object of forcing that secondary employer to cease doing business with a primary employer." *NLRB v. Local 3, Int'l Bhd. of Elec. Workers*, 471 F.3d 399, 402 (2d Cir. 2006) (*"Local 3"*) (quotation marks omitted).

In the underlying NLRB action in this case, EGT alleged that the Union picketed outside of its facility for the purpose of getting EGT, the secondary employer, to cease doing business with the Port of Longview, the primary employer. The district court declined the NLRB's petition to enjoin secondary picketing, and the parties have since entered into a settlement agreement that addresses EGT's allegations. The district court did not award relief for secondary picketing

under Section 8(b)(4), and the district court did not cite Section 8(b)(4) or Section 303 in awarding compensatory damages to EGT.

The Union nonetheless urges us to follow the Second Circuit's holding in *Local 3*, where the Second Circuit declined to award civil contempt damages to third-party employers when the employers were not complainants in the underlying Section 303 action and had not brought their own Section 303 claims against the union.  471 F.3d at 408.  In reaching this conclusion, the Second Circuit cited the lack of any authority to the contrary and its prior decision in *New York v. Operation Rescue National*, 80 F.3d 64, 71 (2d Cir. 1996), where the court vacated the award of compensatory damages to third-party abortion clinics that had been injured by anti-abortion protestors' violation of an injunction.  *Local 3*, 471 F.3d at 408.

We reach a different conclusion, for several reasons. First, civil contempt proceedings serve two purposes: (1) coercing compliance with a court order; and (2) compensating the prevailing party.  *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992).  As the charging party, EGT is a "prevailing party" for purposes of the NLRA and therefore is entitled to compensation for its actual damages. 29 C.F.R. § 102.8 ("The term party . . . shall mean . . . any person filing a charge or petition under the act . . . ."); *cf. EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1514–15 (11th Cir. 1987) (female victims of sex discrimination who were represented by the EEOC in the underlying action were "parties" to that action).

Second, we are not convinced that *Local 3* stands for the broad proposition that employers who are eligible to seek remedies under Section 303 are *never* entitled to civil contempt damages for injuries related to secondary protest activities.  No case has ever cited *Local 3* for such a broad proposition and *Local 3*'s reasoning does not suggest such an expansive holding.

Third, Section 303 states only that private employers "may sue" for damages caused by unfair labor practices, not that they must do so.  29 U.S.C. § 187(b).  Nothing in the LMRA or the NLRA suggests otherwise.  As for *Operation Rescue*, that case is inapposite because it did not involve private employers who were eligible for Section 303 relief.  80 F.3d at 64.  Finally, it is not clear that EGT *could* seek relief under Section 303 in this case, as the district court did not award injunctive relief under Section 8(b)(4).

## III.

We now turn to whether the record supports the amount of compensatory damages awarded to EGT.  A party moving for civil contempt must prove that the non-moving party has violated a court order by clear and convincing evidence.  *FTC v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004).  The Union does not dispute the district court's finding of contempt, but rather argues that there was insufficient proof of the injured parties' alleged damages to support the amount of the compensatory damages.

The Union argues that a clear and convincing standard should apply, while the NLRB advocates for a preponderance

of the evidence standard.[3] We need not resolve which standard applies, since the district court's award meets both standards. Specifically, the record shows that the district court reviewed the various affidavits, declarations, and photos submitted by the NLRB before awarding damages. The court heard testimony from witnesses who were present at the demonstrations. The Union had an opportunity to cross-examine these witnesses and respond to the evidence submitted by the NLRB. The Union was given the chance to submit its own evidence in opposition to the award. The district court considered the Union's objections to the NLRB's proposed damages and overruled them. The Union made the court aware that some of the dates on the NLRB's proof of damages pre-dated or post-dated the contumacious conduct and objected to the inclusion of these costs in the final contempt award. The court took this into account and adjusted the final damages by deducting nearly $50,000 from the NLRB's requested damages. These procedures, as well as the evidence itself, support the district court's contempt award.

These facts also show why the district court's contempt award is civil, not criminal, and therefore did not require the heightened procedural protections that attach to criminal contempt proceedings. Whether a contempt sanction is civil

---

[3] Every circuit to have considered this issue has adopted a preponderance standard. *See FTC v. Kuykendall*, 371 F.3d 745, 751 (10th Cir. 2004) (en banc); *McGregor v. Chierico*, 206 F.3d 1378, 1387 (11th Cir. 2000); *In re Gen. Motors Corp.*, 110 F.3d 1003, 1018 (4th Cir. 1997); *Graves v. Kemsco Grp., Inc.*, 864 F.2d 754, 755 (Fed. Cir. 1988) (citing Seventh Circuit standard). *But see Gregory v. Depte*, 896 F.2d 31, 40 (3d Cir. 1990) (Becker, J., concurring and dissenting) ("[C]ivil contempt awards . . . must be vacated if they appear to us excessive, or unsupported by clear and convincing evidence.").

or criminal is determined by examining "the character of the relief itself." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994) (quotation marks and citation omitted). In *Bagwell*, the Supreme Court explained that a sanction generally is civil if it coerces compliance with a court order or is a remedial sanction meant to compensate the complainant for actual losses. *Id*. at 829. A criminal sanction, in contrast, generally seeks to punish a "completed act of disobedience." *Id*. at 828 (quotation marks and citation omitted). The Supreme Court recognized that the line between civil and criminal contempt is blurred where "[c]ontempts involving out-of-court disobedience to complex injunctions" are at issue. *Id*. at 833–34. As a result, non-compensatory sanctions for violations of complex injunctions required heightened procedural protections including a jury trial and a beyond reasonable doubt burden of proof. *Id*. However, the Court made it clear that *Bagwell* "leaves unaltered the longstanding authority of judges . . . to enter broad compensatory awards for all contempts through civil proceedings." *Id*. at 838.

Here, the district court's contempt awards are civil, not criminal, because they sought to coerce the Union and its members to comply with the court's injunctions and to compensate injured parties for actual losses caused by the Union's and its members' contumacious conduct. *See FTC v. Kuykendall*, 371 F.3d 745, 752 (10th Cir. 2004) ("[W]here the sanctions sought in contempt proceedings are solely to be used to compensate injured [parties], the proceedings are civil in nature."). The contempt awards, in other words, are "justified by other considerations central to the contempt power" and did not "take on a punitive character." *Bagwell*, 512 U.S. at 831. Moreover, the damages were paid directly to the harmed parties, not the court. *See Hicks on Behalf of*

*Feiock v. Feiock*, 485 U.S. 624, 632 (1988) ("If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court . . ."). Thus, the Union was not entitled to a jury trial or a heightened burden of proof.

Finally, the Union argues that the court abused its discretion in denying its request for discovery. It is true that the contempt proceedings occurred within a short timeframe. However, "courts in civil contempt proceedings may proceed in a 'more summary fashion' than in an 'independent civil action.'" *Kuykendall*, 371 F.3d at 756 (citation omitted). Moreover, in this case, the Union did not give the "district court or this court any reason to believe they would have found any significant evidence had they been given more time or discretion to conduct discovery." *Id*.

For the foregoing reasons we uphold the amount of compensatory damages awarded to the NLRB and EGT.

## IV.

We next determine whether EGT's participation in the civil contempt proceedings exceeded the limited role given to a charging party under the NLRA. Section 160(l) of the NLRA provides that only the NLRB can pursue an injunction against unfair labor practices. 29 U.S.C. § 160(l). However, the statute allows a charging party "an opportunity to appear by counsel and present any relevant testimony." *Id*.

The Union claims that EGT's statements of attorneys' fees include legal research and analysis and do not specify "whether the fees were incurred in order to present evidence or to make prohibited legal arguments concerning the

contempt findings." However, the record shows that EGT's participation in the contempt hearings was limited to questioning witnesses regarding the damage caused by the Union at the EGT facility and entering exhibits into evidence. EGT did not "petition the court independently," nor did it seek "relief different than that sought by [the NLRB]." *Retail Clerks Union v. Food Emp'rs Council, Inc.*, 351 F.2d 525, 529 (9th Cir. 1965). Where the charging party "merely supported the original petition for injunctive relief," *id.*, by presenting evidence of contumacious behavior and the resulting damages, such participation does not violate § 160(l).

## V.

The Union argues that the district court abused its discretion by awarding compensatory damages to BNSF and the various law enforcement agencies that responded to the protests, on the ground that these entities were not parties to the underlying NLRB action. We agree.

As discussed above, a court may impose civil contempt sanctions to (1) compel or coerce obedience to a court order, and/or (2) compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance. *Whittaker Corp.*, 953 F.2d at 517. The key is that contempt sanctions are available as compensation when they are awarded to the *prevailing party in the litigation*. *See Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444–45 (1911) ("Proceedings for civil contempt are between the original parties, and are instituted and tried as a part of the main cause."); *Northside Realty Assocs., Inc. v. United States*, 605 F.2d 1348, 1356 (5th Cir. 1979), *superseded by statute as recognized in United States v. City of Jackson*, 359 F.3d 727

(5th Cir. 2004) (explaining that civil contempt sanctions seek "to compensate the prevailing party for losses or damages caused by the other's noncompliance") (footnote omitted). In this case, neither the law enforcement agencies who responded to the picketers nor BNSF were parties to the litigation.

Nor does the district court's award serve the first purpose of civil contempt sanctions—to compel compliance with a court order. As with compensation, typically a contempt order seeks to compel compliance by parties to a litigation. *See Northside Realty Assocs.*, 605 F.2d at 1356 (civil contempt sanctions seek "to coerce the derelict *party* into compliance with the original injunction") (emphasis added). However, in limited circumstances courts have allowed civil contempt sanctions to be awarded to non-parties where doing so was directly necessary to enforce an injunction. For example, in the principal case upon which the NLRB relies, *McComb*, the Supreme Court held that the district court had the power to award back pay to employees of the defendant company, because doing so was necessary to enforce the district court's injunction against the company to pay its employees a minimum wage and overtime. 336 U.S. at 193–94. That is, the award to third parties was necessary to enforce the injunction against a party to the litigation.

The same has been true in other cases in which courts have allowed contempt sanctions to be awarded to third parties.[4] In contrast, courts have *refused* to allow non-parties

---

[4] For example, courts regularly order employers to pay amounts due employees under earlier injunctions. But as the Third Circuit has noted, "[t]hese opinions speak primarily in terms of purging the employers of their contempt, not of making the injured employees whole." *Roe v.*

to be awarded contempt sanctions when doing so would not directly serve to enforce an injunction. *See, e.g.*, *Operation Rescue,* 80 F.3d at 71–72 (state lacked standing to seek civil contempt sanctions on behalf of abortion clinics disrupted by protestors; "[t]he damages award in this case was designed solely to reimburse the [clinics] for harm to their interests," not enforce the injunction against the protestors or compensate the state); *Roe*, 919 F.2d at 873–74 (district court lacked power to award contempt sanctions to non-party abortion clinic disrupted by enjoined protestors; "[a] court should only deviate from th[e] rule [that contempt proceedings are between the parties to a case] and award damages to non-parties when such an order directly compels adherence to a prior decree"); *Northside Realty Assocs.*, 605 F.2d at 1350–51 (district court lacked power to award contempt sanctions to minority purchasers who were denied mortgages by real estate agency enjoined from engaging in discriminatory practices). Indeed, this case is very much like *Operation Rescue*; in both cases, the plaintiff (New York or the NLRB) lacks standing to seek contempt sanctions on behalf of third parties (abortion clinics or law enforcement agencies or BNSF) aggrieved by the defendants' (abortion protestors' or Union members') violations of a court injunction.

In this case, the district court enjoined the unions from engaging in "picket line violence, threats and property damages, mass picketing and blocking of ingress and egress at the [EGT facility]," and from "restraining or coercing

---

*Operation Rescue*, 919 F.2d 857, 872 (3d Cir. 1990) (citing *Usery v. Fisher*, 565 F.2d 137, 139–40 (10th Cir. 1977); *Hodgson v. A–1 Ambulance Service, Inc.*, 455 F.2d 372, 374–75 (8th Cir. 1972); *Fleming v. Warshawsky & Co.*, 123 F.2d 622, 626 (7th Cir. 1941)).

employees of EGT, General [Construction], or any other person doing business in relation to the EGT facility."  The district court's compensatory damages awards to the law enforcement agencies who responded to the picketers and to BNSF did not and could not help enforce this injunction. Rather, those awards were entirely retrospective and compensatory.

The NLRB points out that contempt sanctions may be awarded to non-parties where a statute expressly permits it. *See, e.g.*, *City of Jackson*, 359 F.3d at 737 (allowing contempt sanctions to third party victims of housing discrimination because the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3614(d)(1)(B), provides that courts "may award such other relief as the court deems appropriate, including monetary damages to persons aggrieved").  However, no such statutory provision exists in the NLRA.  The NLRB suggests that an award to the law enforcement agencies and BNSF is *consistent* with NLRA's purpose to deter violations of its provisions, and cites *Kuykendall*, 371 F.3d at 764 ("[N]o reason exists to believe Congress intended to withhold [in the FTC Act] the traditional remedy of compensation to those consumers victimized by the defendants' violations of the Permanent Injunction.").  But the NLRB's reasoning would apply to any statute, and, unlike the sanctions awarded to consumers in the FHAA and FTC Act cases above, the sanctions in dispute in this case were awarded to law enforcement agencies and a railway, not to the unions and workers the NLRA seeks to protect.  *See NLRB v. Nash-Finch Co.*, 404 U.S. 138, 144 (1971) (discussing NLRA's purpose).

In short, we find no authority for, and therefore vacate, the district court's award of contempt sanctions to the law enforcement agencies and BNSF.

## VI.

For the foregoing reasons, we **AFFIRM** the district court's award of compensatory damages to EGT and **VACATE** the award of compensatory damages to BNSF, Longview Police Department, Kelso Police Department, Cowlitz County Sheriff's Office, and the Washington State Patrol.[5] Each side shall bear its own fees and costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART.**

---

[5] EGT's amicus motion and Appellant's request for judicial notice are granted.