**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHELL OFFSHORE INC., a Delaware corporation; SHELL GULF OF MEXICO INC., a Delaware corporation, *Plaintiffs-Appellees*, | No. 15-35392 |
| | DC No. 3:15 cv-0054 SLG |
| v. | |
| GREENPEACE, INC., a California corporation, *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, District Judge, Presiding

Argued and Submitted
August 18, 2015—Pasadena, California

Filed March 4, 2016

Before: Alex Kozinski, A. Wallace Tashima,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Tashima

## SUMMARY[*]

### Mootness

The panel dismissed as moot an appeal from the district court's preliminary injunction against Greenpeace, Inc., concerning protests against oil exploration activities in the Chukchi Sea.

The panel held that the appeal was moot because the injunction had expired, and defendants Shell Offshore, Inc., and Shell Gulf of Mexico, Inc., did not seek to renew it. The panel held that the district court's coercive civil contempt order issued against Greenpeace did not rescue the appeal from mootness.

The panel dismissed the appeal, vacated the district court's contempt order, and remanded the case to the district court for further proceedings consistent with this opinion.

### COUNSEL

Matthew F. Pawa (argued), Benjamin Krass, Pawa Law Group, P.C., Newton, Massachusetts; Laura W. Brill, Kendall Brill & Klieger LLP, Los Angeles, California, for Defendant-Appellant.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Jeffrey W. Leppo (argued), Jason T. Morgan, and Ryan P. Steen, Stoel Rives LLP, Seattle, Washington, for Plaintiffs-Appellees.

**OPINION**

TASHIMA, Circuit Judge:

Plaintiffs Shell Offshore Inc. and Shell Gulf of Mexico Inc. (together, "Shell"), subsidiaries of Royal Dutch Shell plc, and Defendant Greenpeace, Inc. ("Greenpeace"), a non-profit environmental organization, are long-term foes in this Court. Shell has invested significant amounts of time and money in its search for oil in the Chukchi Sea, a stretch of ocean off the northwest coast of Alaska. Greenpeace regards Shell's efforts as dangerous and environmentally irresponsible. As a result, it has engaged in several direct-action protests in an effort to impede Shell's exploration activities.

In this appeal, the parties once again clash over the propriety of a preliminary injunction entered by the district court to protect Shell from certain more vigorous and more intrusive aspects of Greenpeace's activism.

On appeal, Greenpeace challenges the injunction on several jurisdictional bases, as well as on the merits. We do not reach any of these issues, however, because we conclude that the appeal is moot. Accordingly, we dismiss the appeal and remand for further proceedings.

## I. BACKGROUND

### A.  The 2012 Litigation

In 2012, Greenpeace launched a campaign to "Stop Shell" from drilling for oil in the Chukchi Sea, as part of its greater efforts to "Save the Arctic."  Opposed to a project they considered to be a critical threat to the environment, Greenpeace activists unlawfully boarded several ships employed by Shell in its offshore drilling operations.  In response, Shell filed suit in the District of Alaska.  It sought a preliminary injunction to prevent Greenpeace from interfering with its vessels during the Arctic drilling season. *See Shell Offshore Inc. v. Greenpeace, Inc.* (*"Greenpeace I"*), 864 F. Supp. 2d 839, 841–42 (D. Alaska 2012).  The district court granted Shell's request.  The resulting injunction established safety zones around each of the vessels in Shell's Arctic drilling fleet, which Greenpeace was prohibited from entering.  *Id.* at 854–56.  The injunction also barred Greenpeace from committing various torts and acts of trespass against Shell's vessels.  *Id.* at 855.

Greenpeace appealed the preliminary injunction, and we affirmed.  *Shell Offshore Inc. v. Greenpeace, Inc.* ("*Greenpeace II*"), 709 F.3d 1281, 1292 (9th Cir. 2013). While the appeal was pending, the Arctic drilling season ended and the preliminary injunction expired.  *Id.* at 1287. We concluded that the case was nevertheless not moot because the mootness exception for cases "capable of repetition, yet evading review" applied.  *Id.*  We reasoned that Shell held multi-year drilling rights in the Chukchi Sea and "[a] preliminary injunction limited to a single Arctic Ocean open water season . . . will never last long enough to allow full litigation" of the merits.  *Id.*  Following our decision in

*Greenpeace II*, Shell voluntarily dismissed the action without prejudice.

### B.  The 2015 Litigation

In January 2015, Shell announced renewed plans to drill in the Chukchi Sea during the summer drilling season.  In response, Greenpeace resurrected its "Stop Shell" campaign. On April 6, 2015, six activists boarded and secured themselves to the *Polar Pioneer*, a drilling vessel under contract with Shell.  The activists –  one of whom was a Greenpeace employee – remained on board the *Polar Pioneer* for six days.  One day after the activists commenced their protest, Shell filed a new suit – the instant action – against Greenpeace in the District of Alaska, asserting claims for both injunctive relief and monetary damages.

After an evidentiary hearing, the district court granted Shell a preliminary injunction against Greenpeace.  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 2015 WL 2185111 (D. Alaska 2015).   As in 2012, the preliminary injunction established safety zones around each of Shell's contracted vessels.  The injunction also established aerial safety zones around all helideck-equipped ships; banned Greenpeace from engaging in specified actions affecting Shell's systems and facilities; and prohibited Greenpeace from operating "any drones anywhere within the Burger Prospect in the Chukchi Sea" during the drilling season.  *Id.* at *6–8.  Greenpeace timely appealed the preliminary injunction,  challenging the district court's jurisdiction to issue the injunction, in addition to contesting the injunction on the merits.  We have jurisdiction over this interlocutory appeal under 28 U.S.C. § 1292(a)(1).

### 1.  The St. John's Bridge Protest

In July 2015, while this appeal was pending and the preliminary injunction remained in effect, Greenpeace activists suspended themselves from St. John's Bridge over the Willamette River in Portland, Oregon.  As stated in an email to supporters, the activists' purpose was to block one of Shell's contracted vessels, the *Fennica*, from leaving the Portland harbor.  The *Fennica* fell within the preliminary injunction's safety zones, so Shell moved the district court to enforce the injunction.

After an emergency hearing, the district court entered a preliminary order of civil contempt (the "Contempt Order"). The Contempt Order imposed sanctions "so long as [Greenpeace] activists continue to hang from the St. John's Bridge in Portland."  The sanctions were structured as a progressively increasing schedule of fines against Greenpeace:  $2,500 for each hour in contempt during the first day; $5,000 per hour during the second day; $7,500 per hour during the third day; and $10,000 per hour thereafter. Shell contends that Greenpeace activists remained suspended from the bridge for seven hours in violation of the Contempt Order.[1]  The district court has yet to enter a final order sanctioning Greenpeace.[2]

---

[1] The Contempt Order was expressly denominated as "preliminary" because it was "entered without a full evidentiary hearing in light of the emergency, expedited nature of the situation in Portland." It contemplated an evidentiary hearing at a later date.

[2] District court proceedings have been stayed pending this appeal.

### 2.  *Shell Abandons Its Drilling Efforts*

In September 2015, Shell announced that it would cease exploration in offshore Alaska for the foreseeable future.  We issued an order to show cause why this appeal, and the underlying action, should not be dismissed as moot.   In response, Shell argued that although the underlying litigation continued to present a case or controversy to the district court, this appeal would become moot upon the expiration of the preliminary injunction.  Greenpeace disagreed and argued the inverse:  that the pending preliminary Contempt Order rescued the appeal from mootness, but that Shell's actions had rendered the underlying litigation moot.  The preliminary injunction expired on its own terms on November 1, 2015, and Shell did not seek to renew it.

## II. DISCUSSION

"We have an independent obligation to consider mootness *sua sponte.*"  *Greenpeace II*, 709 F.3d at 1286 (quoting *NASD Dispute Resolution, Inc. v. Judicial Council*, 488 F.3d 1065, 1068 (9th Cir. 2007)).  "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quoting *Cty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)).  When events change such that the appellate court can no longer grant "any effectual relief whatever to the prevailing party," any resulting opinion would be merely advisory.   *Id.* (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)).  In such a case, the appellate court lacks jurisdiction and must dismiss the appeal.  *SEIU v. Nat'l Union of Healthcare Workers*, 598 F.3d 1061, 1068 (9th Cir. 2010).  We first address, as we must, the question of mootness before we can

consider the substance of the parties' contentions. *Greenpeace II*, 709 F.3d at 1286.

## A. The Preliminary Injunction

All of the issues on appeal derive from the district court's May 8 order granting Shell a preliminary injunction. Thus, our jurisdiction to hear this appeal hinges on whether the parties have a continued, legally cognizable interest in the validity of the injunction. The injunction expired on November 1, 2015, and Shell has not sought to renew it. As a result, the injunction no longer constrains Greenpeace, and it can no longer be enforced by Shell's motion. Because the only order on appeal has now expired, we are unable to grant any effectual relief to either party. This appeal is moot.[3]

Even though the preliminary injunction has expired and Shell has pulled out of the Arctic, Greenpeace argues that the still-pending contempt proceeding rescues its appeal from mootness. This argument is unavailing. Only compensatory contempt proceedings survive the termination of an underlying injunction. Here, as we explain below, the district

---

[3] Unlike our decision in *Greenpeace II*, 709 F.3d at 1287, the mootness exception for disputes "capable of repetition, yet evading review" does not apply to this appeal. In 2012, even after the preliminary injunction expired, Shell continued to hold oil and gas leases in the Chukchi Sea. As we stated then, there was no reason to believe that Greenpeace would not renew its protest actions upon Shell's return to the Arctic. *Id.* at 1288. Indeed, that is exactly what occurred. By contrast, in 2015, Shell called a halt to all Arctic exploration "for the foreseeable future." Moreover, the U.S. Department of the Interior has cancelled further lease sales for the region through 2017. Thus, at this point, any assertion that Greenpeace is likely to resume its Arctic protests against Shell would be purely speculative.

court imposed only a coercive civil contempt sanction. Because the contempt proceeding at issue here is coercive, it cannot rescue the appeal from mootness.

### 1. The District Court Issued a Coercive Civil Contempt Order

A court's contempt powers are broadly divided into two categories: civil contempt and criminal contempt. "The difference between criminal and civil contempt is not always clear. The same conduct may result in citations for both civil and criminal contempt." *United States v. Rylander*, 714 F.2d 996, 1001 (9th Cir. 1983) (citing *United States v. UMWA*, 330 U.S. 258 (1946)). In distinguishing between criminal and civil contempt, we must look to the sanction's "character and purpose." *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 827 (1994). "The purpose of civil contempt is coercive or compensatory, whereas the purpose of criminal contempt is punitive." *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 539 F.3d 1039, 1042 (9th Cir. 2008) (quoting *United States v. Armstrong*, 781 F.2d 700, 703 (9th Cir. 1986)). The civil contemnor is said to "carr[y] the keys of his prison in his own pocket," whereas the criminal contemnor "is furnished no key, and he cannot shorten the term by promising not to repeat the offense." *Bagwell*, 512 U.S. at 828–29.

A court may wield its civil contempt powers for two separate and independent purposes: (1) "to coerce the defendant into compliance with the court's order"; and (2) "to compensate the complainant for losses sustained." *UMWA*, 330 U.S. at 303–04; *see also Ohr ex rel. NLRB v. Latino Express, Inc.*, 776 F.3d 469, 479–80 (7th Cir. 2015) ("A civil contempt order can serve to coerce a party to obey a court order, or it can be intended to compensate a party who has

suffered unnecessary injuries or costs because of contemptuous conduct." (collecting cases)); *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110–11 (9th Cir. 2005); *Coleman v. Espy*, 986 F.2d 1184, 1190 (8th Cir. 1993); *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). "The test . . . is 'what does the court primarily seek to accomplish by imposing the sanction?'" *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). Because civil compensatory sanctions are remedial, they typically take the form of unconditional monetary sanctions; whereas coercive civil sanctions, intended to deter, generally take the form of conditional fines.[4] *See id.* at 780 (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444 (1911)). Thus, the ability to purge is perhaps the most definitive characteristic of coercive civil contempt. *Bagwell*, 512 U.S. at 829 ("Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge."); *see also Lasar*, 399 F.3d at 1110.

Further complicating matters, it is possible for sanctions that were initially imposed for a civil, coercive purpose to change over time; indeed, civil coercive contempt may eventually evolve into criminal contempt. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1481 (9th Cir.

---

[4] Whether fines are payable to the opposing party or to the court may also be a factor in deciding whether they are coercive or compensatory. This factor alone, however, is not determinative. *Cf. Lasar*, 399 F.3d at 1111 (not determinative as between civil and criminal contempts); *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1138 n.7 (9th Cir. 2001) ("Whether a fine is payable to the court . . . as opposed to the complainant is a relevant, although not necessarily determinative, factor in determining whether a sanction is punitive." (citing, *inter alia*, *Hicks v. Feiock*, 485 U.S. 624, 631–32 (1988))).

1992) (noting that "the propriety and even the nature of the contempt sanction can change over time"); *see also United States v. Rylander*, 460 U.S. 752, 757 (1983) (stating that the test for civil contempt on appeal is whether contemnor has the *present* ability to comply, not whether it could have complied in the past); *SEC v. Elmas Trading Corp.*, 824 F.2d 732, 732–33 (9th Cir. 1987) (noting that civil contempt may become criminal over time). This is because, in order to categorize the contempt properly, a court must look to the purpose of the contempt at the time it is *enforced*, rather than at the time it is *imposed*. "A court's power to impose coercive civil contempt depends upon the ability of the contemnor to comply with the court's coercive order," something which may change over time. *Falstaff Brewing Corp.*, 702 F.2d at 778 (citing *Shillitani*, 384 U.S. at 371).

Here, the district court's Contempt Order imposes sanctions "so long as [Greenpeace] activists continue to hang from the St. John's Bridge in Portland." As described above, the Contempt Order fined Greenpeace $2,500 per hour for the first 24-hour period it violated the injunction, then incrementally increased the hourly fine per 24-hour period until it reached a cap of $10,000 per hour. The sanctions were thus imposed primarily to coerce Greenpeace into compliance with the preliminary injunction. Further accrual of the conditional fines could have been avoided by Greenpeace at any time, should it have choosen to recall the activists and comply with the injunction. The district court's civil sanctions are therefore properly understood to be coercive. *See also Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 596 (6th Cir. 1999) ("[T]he Supreme Court has recognized that per diem fines like this one are generally coercive." (citing *Bagwell*, 512 U.S. at 826)).

### 2. A Coercive Civil Contempt Order Is Moot When the Underlying Preliminary Injunction Terminates

As described by our sister circuits, the "general rule" requires that "[i]f a civil contempt order is coercive in nature . . . it is mooted when the proceeding out of which it arises terminates." *Ohr*, 776 F.3d at 479–80; *see also Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961–62 (5th Cir. 1995); *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992) ("A court cannot impose a coercive civil contempt sanction if the underlying injunction is no longer in effect." (citing *Shillitani*, 384 U.S. at 370)).

While our own caselaw has never clearly expressed this principle, it is implicit in the logic of our previous decisions. In *Frankl v. HTH Corp.*, for example, we held that an otherwise-moot preliminary injunction continued to raise a "live" controversy "because its resolution [was] crucial to a pending claim for *retrospective* monetary relief . . . ." 650 F.3d 1334, 1342 (9th Cir. 2011) (emphasis added). While we did not discuss the distinction between compensatory and coercive civil contempt, our holding was explicitly premised on the compensatory nature of the pending contempt proceeding. *See also Lasar*, 399 F.3d at 1108–09 (finding litigation not moot where compensatory contempt sanctions still pending); *cf. Falstaff Brewing Corp.*, 702 F.2d at 780 (recognizing that, in the discovery context, coercive contempt is unenforceable when compliance with underlying order becomes "impossible" or "futile").

The justification for this bright-line distinction between compensatory and coercive contempts arises out of their disparate purposes. Once an injunction has been terminated,

a court may still award compensation to the plaintiff as a result of injuries caused by its opponent's contumacy.  But a coercive sanction would no longer serve any purpose:  Once the injunction has expired, there is no longer anything left to coerce.  Instead, enforcing the sanctions could only serve to punish the contemnor.  *See Bagwell*, 512 U.S. at 829 ("When a contempt involves the prior conduct of an isolated, prohibited act, the resulting sanction has no coercive effect."). Thus, once the underlying injunction has been terminated and the contemnor can no longer purge its contempt through compliance, the contempt becomes criminal.

"Criminal contempt is a crime in the ordinary sense, and criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings."  *Bagwell*, 512 U.S. at 826 (citations and internal quotation marks omitted).  Thus, in cases where the underlying proceeding has been rendered moot, the coercive contempt proceeding must be vacated in order to avoid a due-process violation.  *See FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 70 (2nd Cir. 2006); *Yashinsky*, 170 F.3d at 596 (explaining that the contemnor "need not pay the [accumulated] fines . . . because those fines no longer serve the purpose of coercing his compliance . . . and requiring [him] to pay the accumulated fines now would only serve to punish him for his intransigence").

Here, the preliminary injunction has expired and will not be renewed.  Thus, there is no longer anything left for the district court to coerce Greenpeace to do.  Enforcing the fee-schedule monetary sanction would only serve to punish Greenpeace for its past contumacious actions.  Accordingly, the pending contempt proceedings must be vacated.  With no

surviving contempt proceedings, the appeal has lost any legally significant, present effects; it is therefore moot.[5]

## B.  The Underlying Proceeding

Even where one issue in a case has been rendered moot, others may remain. *See, e.g.*, *Camenisch*, 451 U.S. at 394; *Powell v. McCormack*, 395 U.S. 486, 497 (1969).  As discussed above, Greenpeace's appeal of the preliminary injunction is moot.  Shell's complaint, however, also seeks damages for injuries allegedly arising out of Greenpeace's 2015 "Stop Shell" campaign.[6]  These issues were not settled – or mooted – either by the expiration of the preliminary injunction or by Shell's announcement that it has cancelled further exploration in the Arctic.  Whether and to what extent Greenpeace injured Shell in the course of its 2015 "Stop Shell" campaign remains a live controversy as to which the district court retains the jurisdiction to award appropriate

---

[5] Greenpeace also argues that the appeal is not moot because the preliminary injunction order raised issues on the merits that "could affect the future of litigation in the district court."  This argument ignores the rule that "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  The validity of the preliminary injunction may become an issue in future district court proceedings – but at this point, that is only speculation. We thus leave it to the district court to address the remaining merits issues in the first instance.

[6] For example, in Paragraph 4 of the Complaint's Requests for Relief, Shell prays for "[a]n award of damages including incidental damages for all economic harm resulting from the tortious actions of Greenpeace Inc. and the individual defendants, and economic harm to Shell as a result of tortious actions by others with whom Greenpeace Inc. is acting in concert."

relief, if a finding of liability is made.  We leave it to the district court to consider Shell's remaining claims in the first instance on remand.

### III. CONCLUSION

This appeal is moot, and therefore must be dismissed. Accordingly, we also vacate the district court's July 30, 2015, Contempt Order.    The case is remanded for further proceedings consistent with this opinion.  Each side shall bear its own costs on appeal.

**DISMISSED and REMANDED.**