**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SACRAMENTO HOMELESS UNION, a local of the California Homeless Union/Statewide Organizing Council; BETTY RIOS; DONTA WILLIAMS; FALISHA SCOTT, | No. 23-16123 <br><br> D.C. No. 2:22-cv-01095-TLN-KJN |
| *Plaintiffs-Appellees*, | ORDER |
| v. | |
| CITY OF SACRAMENTO, | |
| *Defendant-Appellant*, | |
| and | |
| COUNTY OF SACRAMENTO, | |
| *Defendant*. | |

Filed September 10, 2024

Before: M. Margaret McKeown and Morgan Christen, Circuit Judges, and David A. Ezra,[*] District Judge.

---

[*] The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

Order;
Statement by Judges McKeown, Christen, and Ezra;
Statement by Judge R. Nelson

## SUMMARY[**]

### Mootness

The panel denied a petition for panel rehearing and for rehearing en banc from the panel's order dismissing as moot an appeal from the district court's preliminary injunction in an action brought by unhoused individuals who alleged that the City of Sacramento violated the Fourteenth Amendment under the state-created danger doctrine by clearing homeless encampments.

Respecting the denial of rehearing en banc Judge McKeown, joined by Judge Christen and District Judge Ezra, wrote that a brief account of the facts and the panel's faithful application of circuit precedent was appropriate because Judge Nelson's statement respecting the denial of rehearing en banc obscured the basis for the panel's underlying dismissal order. Judge McKeown wrote that this appeal is moot, as the preliminary injunction at issue expired more than a year ago and invoking an exception to mootness would be at odds with circuit precedent. The legal issue underlying the injunction—the state-created danger doctrine under the Fourteenth Amendment's Due Process Clause—is

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

too fact dependent to decide on circumstances that existed more than a year ago and circumstances that have changed.

Respecting the denial of rehearing on banc, Judge R. Nelson, joined by Judges Bumatay and VanDyke, wrote that this case warrants comment even though it is not a proper vehicle for en banc review. The panel wrongly dismissed this appeal as moot because the capable of repetition, yet evading review, exception to mootness applies.  Moreover, the district court's injunction was issued in error under this circuit's precedent and ignores the original meaning of the Due Process Clause of the Fourteenth Amendment.

---

## ORDER

The panel unanimously voted to deny the petition for panel rehearing.  Judge Christen voted to deny the petition for rehearing en banc, and Judges McKeown and Ezra so recommend.  The full court was advised of the petition for rehearing en banc.  A judge of the court requested a vote on whether to rehear the matter en banc.  The matter failed to receive a majority of the votes of the active judges in favor of en banc consideration.  Fed. R. App. P. 35.  The petition for panel rehearing and rehearing en banc, Dkt. #61, is DENIED.

McKEOWN and CHRISTEN, Circuit Judges, and EZRA,[1] District Judge, respecting the denial of rehearing en banc:

In the normal course of events, a four-sentence, unpublished dispositive order dismissing an appeal as moot would not require further discussion following denial of a petition for rehearing en banc. Not surprisingly, as Judge Nelson acknowledges in his statement, "this case is not the proper vehicle to expend precious en banc resources," and "en banc review . . . is better reserved for a subsequent case." Statement Concerning the Denial of Rehearing En Banc at 8, 16. We couldn't agree more. However, because Judge Nelson's extensive statement obscures the basis for the underlying order, a brief account of the facts and the panel's faithful application of circuit precedent is appropriate.

Undeniably, this appeal is moot. The preliminary injunction at issue expired more than a year ago, on August 31, 2023. Even after the City of Sacramento filed an appeal, no party sought to expedite the appeal. Oral argument before the panel occurred on March 14, 2024, over six months after the expiration of the injunction. The panel's order dismissing the appeal as moot was filed on March 15, 2024.

Importantly, no party sought to revive the injunction. The case is continuing in the district court in the ordinary course. In the absence of an injunction, "the issues are no longer 'live'," and there is nothing left in the interlocutory appeal for this court to adjudicate. *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 628 (9th Cir. 2016) (citations omitted). Nothing "evade[s] review" in this case.

---

[1] The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

*Id.* at 626.  Without an injunction on the books, there is nothing to review.  And nothing precludes another injunction and another appeal should circumstances change.

Judge Nelson claims that the panel erred in not holding that this appeal falls within an exception to mootness because the issue—an expired injunction prohibiting the clearing of homeless encampments during extreme heat in the summer of 2023—is "capable of repetition, yet evading review" under *Where Do We Go Berkeley v. California Department of Transportation*, 32 F.4th 853 (9th Cir. 2022).  Nelson Statement at 10–13.  But as Judge Nelson recognizes, "mootness is generally a fact-specific inquiry," and the facts here precluded the panel from concluding that this appeal met the exception.  *Id.* at 13.

After the injunction expired in August 2023, in September 2023, Sacramento Homeless Union ("Union") sought another injunction that the district court denied.  D. Ct. Dkt. No. 74 at 5.  Specifically, the district court pointed out that, in the wake of the prior injunction, the City of Sacramento had implemented measures to mitigate the danger of extreme heat to unhoused individuals.  *Id.* at 4.  The Union never appealed that denial.  Indeed, the landscape had changed.  Thus, the panel followed our court's approach in *Ahlman v. Barnes*, 20 F.4th 489 (9th Cir. 2021), because "any subsequent injunction would be based on an entirely new set of factual circumstances."  *Id.* at 495.  And, in light of the Union's failure to secure another injunction in 2023 and the measures taken by the City, "the chance that [the Union] successfully acquire[s] another preliminary injunction . . . is remote."  *Id.*   A remote hypothetical concerning an as-yet untaken approach by the City to a new of circumstances cannot revive a moot case.

Invoking an exception to mootness here would be at odds with our precedent.   The legal issue underlying the injunction—the state-created danger doctrine under the Fourteenth Amendment's Due Process Clause—is too fact dependent to decide on circumstances that existed more than a year ago and circumstances that have changed.  For a state-created danger claim, a state official must have engaged in "affirmative conduct" that "exposed [an individual] to an actual, particularized danger" and the official must have "acted with deliberate indifference," elements that are inherently factual in nature. *Polanco v. Diaz*, 76 F.4th 918, 926 (9th Cir. 2023) (cleaned up).  It would have been unwise for the panel to reach the merits or consider the City's policy based on an outdated record.  And the mixed questions of fact and law involved in this appeal differ dramatically from the purely legal issue—the application of the Americans with Disabilities Act to clearing of encampments—involved in *Where Do We Go Berkeley.*  32 F.4th at 859–64.

As our court has counseled, "When events change such that the appellate court can no longer grant any effectual relief whatever to the prevailing party, any resulting opinion would be merely advisory." *Shell Offshore*, 815 F.3d at 628 (internal quotation marks and citation omitted).  The panel properly dismissed this appeal because any opinion or judgment on the expired injunction would have been nothing more than advisory, something that Article III does not permit.  Judge Nelson's consideration of the merits also constitutes nothing more than an advisory opinion on a not-yet-filed case. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) ("[C]ourts have 'no business' deciding legal disputes or expounding on law in the absence of such a case or controversy." (citation omitted)).  The court as a whole appropriately decided not to rehear this appeal en banc.

R. NELSON, Circuit Judge, with whom Judges BUMATAY and VANDYKE join, respecting the denial of rehearing on banc:

For the past decade, California has had the largest homeless population in the nation.[1]   More than 180,000 homeless people roam the public streets.[2]   Sacramento County alone has over 6,000 homeless.[3]   This crisis impacts *everyone*.  It reduces the quality of life for millions, increases anti-social behavior, and decimates businesses. Encampments specifically allow for "dependable access to illegal drugs" and result in "an increase in crimes both against the homeless and by the homeless."  *City of Grants Pass v. Johnson*, 603 U.S. __, __ (2024) (citations omitted). Local municipalities have struggled to accommodate the homeless while respecting the rights of the millions of city dwellers to a safe and clean environment.   Court intervention—most notably from our court—has hamstrung municipal efforts to address the issue reasonably.

---

[1] Public Policy Institute of California, *Homeless Populations Are Rising Around California* (Feb. 21, 2023), https://www.ppic.org/blog/homeless-populations-are-rising-around-california/ (https://perma.cc/L473-H2BB).

[2] Public Policy Institute of California, *An Update on Homelessness in California* (Mar. 21, 2024), https://www.ppic.org/blog/an-update-on-homelessness-in-california/ (https://perma.cc/6JZB-H3ZK).

[3] Emily Hamann, *Point-In-Time Count finds 29% drop in homelessness in Sacramento County since 2022*, SACRAMENTO BUSINESS JOURNAL (June 5, 2024), https://www.bizjournals.com/sacramento/news/2024/06/05/point-in-time-2024-shows-homelessness-drop.html (https://perma.cc/LXX9-YJC6).

Facing such difficulties, Sacramento (the City) attempted to relocate homeless individuals, thereby ensuring that all Sacramentans had safe access to the City's public spaces. Sacramento acted fully within its lawful authority. Removing these encampments not only helps "address encampments that pose significant health and safety risks" but also "encourage[s] their inhabitants to accept other alternatives like shelters, drug treatment programs, and mental-health facilities." *Id*. (citation and quotations omitted). That said, the district court below—once again—moonlighted as the city council. This was error. *See id.* Under different circumstances, this case would warrant en banc review. Because our court dismissed the appeal as moot in an unpublished disposition, the injunction expired a year ago and to date no new injunction has been sought, however, this case is not the proper vehicle to expend precious en banc resources. Still, it warrants comment.

I

In 2022, the Sacramento Homeless Union (the Union) alleged that, by clearing encampments, Sacramento violated the Fourteenth Amendment under what we have called the state-created danger theory. The Union argued that by "sweeping existing homeless encampments" during periods of "extreme heat," the City was "forcing those swept into the more dangerous circumstances of uncovered streets." On that theory, the Union sought both mandatory and prohibitory injunctive relief against the City. The mandatory injunction sought to compel the City to protect the homeless from extreme heat. And the prohibitory injunction sought to prevent the removal of existing homeless encampments. The district court denied the mandatory injunction. *Sacramento Homeless Union v. County of Sacramento*, 617 F. Supp. 3d 1179, 1197 (E.D. Cal. 2022) (*Sacramento*

*Homeless Union I*).  But it imposed a twenty-eight-day prohibitory preliminary injunction "enjoin[ing] the City . . . from clearing encampments belonging to the unhoused."  *Id.* at 1200.  This injunction was later extended until after "the extreme heat days in . . . September [were] forecasted to largely end."  *Sacramento Homeless Union v. County of Sacramento*, No. 2:22-cv-01095-TLN-KJN, 2022 WL 4022093, at *11 (E.D. Cal. Sept. 2, 2022).

The district court found that the City's clearing of encampments in extreme heat was "affirmative conduct on the part of the City in placing Plaintiffs in danger."  *Sacramento Homeless Union I*, 617 F. Supp. 3d at 1193 (punctuation omitted).  It also found that the Union adequately established that the City acted with "deliberate indifference" to a "known or obvious danger"—"extreme heat."  *Id.*  It recognized that enjoining the City "may hamper [its] ability to promote the public health, safety, and general welfare."  *Id.* at 1199.  But "the possible harm in temporarily restraining the City from clearing encampments" was "far outweighed by Plaintiffs' interest in their own health and welfare."  *Id.*  The City complied with the injunction and did not appeal.

In 2023, the Union again sought injunctive relief on the same theory.  *Sacramento Homeless Union v. County of Sacramento*, No. 2:22-cv-01095-TLN-KJN, 2023 WL 5835750, at *1 (E.D. Cal. Aug. 3, 2023).  Again, the district court granted the Union's request, concluding that the City's "affirmative conduct" subjected homeless individuals to the "known and obvious danger" of extreme heat.  *Id.*

The three-judge panel dismissed the appeal as moot because—by the time they decided the case—the 2023 injunction had expired.  Citing *Ahlman v. Barnes*, 20 F.4th

489 (9th Cir. 2021), the panel found that changing factual circumstances may affect the likelihood and scope of any future injunction.

## II

The panel wrongly dismissed this appeal as moot. Our cases recognize that a case is not moot if the issue is "capable of repetition, yet evading review." *Native Vill. of Nuiqsut v. BLM*, 9 F.4th 1201, 1209 (9th Cir. 2021). "In order for [this] exception to apply, (1) the duration of the challenged action or injury must be too short to be fully litigated; and (2) there must be a reasonable likelihood that the same party will be subject to the action again." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1287 (9th Cir. 2013) (cleaned up).

In *Ahlman*, the district court issued a preliminary injunction after several inmates sued their county jail because of its poor COVID-19 prevention measures. 20 F.4th at 492. The injunction expired while on appeal, and we held that the case was moot. *Id.* at 494–95. We agreed that the brief nature of the injunction meant that the appeal would not be fully litigated before the injunction expired. *Id.* at 494. Yet we held that it was unlikely that the inmates would face the same issue again. *Id.* at 494–95. We noted that improving conditions in the jail made the possibility of another preliminary injunction remote. *Id.* at 495. Thus, the case failed to meet the second requirement of our mootness exception. *Id.*

*Ahlman* differs significantly from this case. While COVID-19 was a once-in-a-century health pandemic, unlikely to recur, the Union here bases its claims on the summer heat in Sacramento. That is an annual occurrence and certain to repeat. Indeed, the Union brought these same

claims in 2022 and 2023, avoiding appellate review because of the brief two-month period for their claims. *Ahlman*, thus, does not control the mootness analysis for these claims.

The more apt case for mootness here is *Where Do We Go Berkeley v. California Department of Transportation*, 32 F.4th 852 (9th Cir. 2022). Like this case, *Where Do We Go Berkeley* involved a government actor clearing homeless encampments. And we considered whether we could decide the merits of an injunction when the injunction was near expiring.[4] We held that we could. Unlike the injunction in *Ahlman*, the dispute over clearing encampments was likely to recur. New individuals could join the encampments, creating similar suits. *Id.* at 858. And plaintiffs could challenge the clearing of nearby encampments. *Id.* We acknowledged that any future suits would be based on "different facts." *Id.* at 859. But our precedent never required—and instead precluded—that "identical" facts were likely to exist in a future case before finding that a case was not moot. *Id.* So long as the same party would likely challenge the same action again, the case remained live. *Id.*

The mootness analysis here is controlled by *Where Do We Go Berkeley*, not *Ahlman*. First, the duration factor to our mootness exception is met. *Greenpeace*, 709 F.3d

---

[4] The original injunction was set to expire on March 23, 2022, before the district court extended it to April 30. *Where Do We Go Berkeley*, 32 F.4th at 857. Thus, the injunction was still in place when we issued on our opinion on April 27. *Id.* Still, we treated the original injunction as expired for the purpose of our mootness analysis. *Id.* ("Although the appealed order expired before argument . . . we have jurisdiction to review the expired original injunction."). Ultimately, whether the injunction was in place had no bearing on our holding on mootness because we held that the plaintiffs could file similar injunctions again. *Id.* at 858.

at 1287.  For the past two years, the district court granted the Union a preliminary injunction that lasted just long enough for the summer to end but just short enough not to be fully litigated.  There is also a reasonable likelihood that the same party will be subject to the action again.  *Id.*  The Union has challenged the City's encampment policies for two years in a row.  Hot weather will continue this year and every year afterward.  And the City continues to seek to remediate homeless encampments—in the summer and year-round.  So it is likely that the same party will challenge the same action again.  *See Where Do We Go Berkeley*, 32 F.4th at 858.  Accepting this case as moot, thus, would make few—if any—similar preliminary injunctions reviewable.  And it would preclude the City—along with every other locality in the circuit—from ever removing disruptive encampments from public spaces during extreme weather.  Our mootness doctrine was never designed so that one party could achieve such a tactical advantage.

The panel's new theory in its concurrence only highlights why its mootness determination was wrong.  The panel now claims that the first injunction which expired in August 2023 was moot because Plaintiff was denied a second injunction in September 2023.  But the September 2023 injunction was denied largely because the City had complied with the then-expired injunction.  Still, the City was challenging that expired injunction, including on appeal.  It cannot be that a defendant's compliance with an injunction by taking remedial measures that never should have been imposed in the first place can be the basis for "an entirely new set of factual circumstances."  *Ahlman*, 20 F.4th at 495.  *Ahlman* certainly doesn't stand for that proposition.  At bottom, the panel continues to read the mootness exception out of existence.  Under the panel's theory, the City would

never be able to obtain appellate review of an injunction that they have acted to comply with. We should not discourage compliant action in this way.

Even so, mootness is generally a fact-specific inquiry. The injunction expired nearly a year ago now. And the panel discussed the appeal as moot in an unpublished order not binding in any future case. I therefore do not believe our en banc resources are warranted to review the mootness question currently. Still, we should not repeat the error on mootness in future cases.

III

A

Because I do not believe this case is moot, I consider the merits. The district court erred in its 2022 and 2023 orders in granting an injunction based on a state-created danger theory. To make a successful claim under the state-created danger doctrine, a plaintiff must allege that defendants "affirmatively create[d] an actual, particularized danger [that plaintiffs] would not otherwise have faced." *Sinclair v. City of Seattle*, 61 F.4th 674, 681 (9th Cir. 2023) (cleaned up). And that particular danger must be directed toward a specific victim. *Id.* at 682. Generalized danger that "affect[s] all . . . equally" is not enough. *Id.*

The Union's state-created danger doctrine is not cognizable because the City's actions fall far short of creating any such particularized danger. The City did not create the extreme heat that made it dangerous for those living in the encampments. *See Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1082 (9th Cir. 2006) (Bybee, J., dissenting) (recognizing a "sharp distinction" between "facts demonstrating that police action created the danger to the

person and facts demonstrating a danger that existed without police action"). Indeed, those living in encampments suffered from heat stroke and other heat-related illnesses without any government action. Removing the homeless from the encampments, thus, did not create a danger that they were not already facing—nor did removal increase the danger. *Sinclair*, 61 F.4th at 681. Nor can it be said that there is a *particular* danger directed toward a specific victim. *Id.* at 682. Like *Sinclair*, the danger caused by clearing encampments, if any, "affected all [persons] . . . equally." *Id.* The district court's merits analysis therefore wrongly applied our precedent.

## B

In addition to being an incorrect application of our precedent, the decision below further enshrines our circuit's troubling trend of misinterpreting the original meaning of the Due Process Clause of the Fourteenth Amendment. As several judges on our court have noted, the "state-created danger exception" requires a "deprivation of liberty." *See Murguia v. Langdon*, 73 F.4th 1103, 1104, 1118 (9th Cir. 2023) (Bumatay, Circuit Judge, joined by Callahan, Ikuta and R. Nelson, Circuit Judges, dissenting from the denial of rehearing en banc). In other words, a constitutional violation occurs only when the state uses its monopoly on physical force to coerce an individual's actions. *Id.* at 1115. The lawful clearing of encampments does not rise to that level of constitutional deprivation. And by straying from the Fourteenth Amendment's original meaning, the district court turned the Fourteenth Amendment into just another "font of tort law." *Paul v. Davis*, 424 U.S. 693, 701 (1976); *cf. Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1122 (9th Cir. 2021) (the Constitution and state common law are thus "two distinct legal frameworks").

The Supreme Court has repeatedly stressed that the Fourteenth Amendment's Due Process Clause "does not transform every tort committed by a state actor into a constitutional violation." *DeShaney v. Winnebago Cnty. Dep't of Soc. Serv.*, 489 U.S. 189, 202 (1989). This case is a prime example of how we have interpreted the Clause to do just that. In cases such as *Murguia v. Langdon*, 61 F.4th 1096, and *Kennedy*, 439 F.3d 1055, we have strayed far from an original understanding of the Fourteenth Amendment. Even when bound by precedent, however, such precedent that is not in accordance with original understanding should not be expanded. *Cf. Kennedy v. Bremerton Sch. Dist.*, 4 F.4th 910, 945–46 (9th Cir. 2021) (R. Nelson, Circuit Judge, joined by Callahan, Bumatay and VanDyke, Circuit Judges, and by Ikuta, Circuit Judge, as to Part I, dissenting from the denial of rehearing en banc) (an "ahistorical, atextual, and failed attempt to define [a Constitutional] Clause . . . should not [be] extended."); *see also Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 318 (2000) (Rehnquist, C.J., dissenting) (we should not "distort[] existing precedent" where it would be "[un]faithful to the meaning" of the Constitutional text). Thus, in future cases, district courts in our circuit should reorient their decisions in this area to a more faithful reading of the original meaning of the Fourteenth Amendment.

## IV

In sum, the panel's decision does not comply with our court's precedent on mootness. And the district court's injunction was issued in error under our precedent and ignores the original public meaning of the Fourteenth Amendment.

But our en banc power is meant to allow "for more effective judicial administration." *Textile Mills Sec. Corp.*

*v. Comm'r*, 314 U.S. 326, 334–35 (1941).  Here, en banc review—with its considerable expenditure of time and resources—is better reserved for a subsequent case.  I hope that future cases correct this course, and further corrective measures, like en banc review, are not necessary.